THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL HILL, Defendant-Appellant.

(No. 72-284; ▮▮▮▮▮▮▮▮▮)

Third District—November 30, 1973.

350

Stephen Hurley, Assistant Appellate Defender, of Ottawa, for appellant.

Richard Orloff, Assistant State's Attorney, of Joliet, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Michael Hill, the defendant, was charged by the grand jury of Will County of committing two separate crimes of burglary. One indictment charged the commission of a burglary of the Cathedral of St. Raymond Nonnatus in the city of Joliet. The other indictment charged him with burglarizing the St. John the Baptist Church Rectory also located in Joliet.

The defendant was taken into custody on October 24, 1970. On February 10, 1971, the trial court ordered the case relating to the burglary of St. John's Church Rectory to be set for trial on February 22, 1971. On February 22, being one hundred and twenty-one days after arrest, the State moved that the case be continued until March 15, 1971. This motion was granted over objections made by the defendant. Following a mistrial and a new jury trial the defendant was found guilty of the burglary of St. John the Baptist Church Rectory. Two days later the defendant entered a plea of guilty to the charge contained in the indictment relating to the burglary of the Cathedral of St. Raymond Nonnatus. Approximately one month later the court held a joint probation hearing on both cases. It was at this time that a Mr. June, the Assistant

Adult Probation Officer for Will County, testified that he believed the defendant to be not guilty and that the defendant had pled guilty as the result of pressure applied by the State's Attorney's office. The court withdrew its acceptance of the defendant's plea of guilty, set the case for trial and then proceeded to reprimand Mr. June for his implication. A detailed account of this reprimand will be set forth in full when we consider the issues presented in this appeal. One month later on June 24, 1971, the defendant again pled guilty to the charge of burglary of the Cathedral. Upon the State's recommendation the court then sentenced the defendant in both cases to concurrent terms of not less than one (1) nor more than five (5) years in the penitentiary.

The first issue raised by the defendant is that he was denied effective assistance of counsel when his appointed attorney failed to move for a change of venue after learning of the trial judge's predisposition of his guilt. This issue is predicated upon the defendant's contention that the reprimand by the judge of Mr. June, the probation officer, indicates that the court had a predisposition as to the defendant's guilt. In order to consider this issue it therefore becomes necessary to set forth the reprimand which is as follows:

"I don't ever remember a time that this State's Attorney or any State's Attorney has been in our County accused of any misconduct, any kind of misconduct in obtaining guilty pleas. There's nobody here wants a guilty plea that's not completely voluntary on the part of the individual.

And because there's any least question about this one, I've set it aside. Now, you never considered the fact that he also plead not guilty to the St. John burglary, did you?

MR. JUNE: Yes, I did.

THE COURT: Did you consider the fact that a jury of twelve people of our community found him guilty of that offense?

MR. JUNE: Yes, I did.

THE COURT: Against his will and against his not guilty plea?

MR. JUNE: I considered it.

THE COURT: Did you ever consider that fact?

MR. JUNE: I considered it.

THE COURT: You discounted that completely.

MR. JUNE: No, I did not discount it.

THE COURT: You felt that even though they found him guilty, he wasn't guilty, is that it?

MR. JUNE: Ah huh, just representing my feelings, on what the defendant had said.

THE COURT: Well, Mr. Rudman what do you suggest I do

in this matter with Mr. June? Obviously we're not communicating too well.

MR. JUNE: I understand what you're saying. I understand the facts of the situation. I understand what happened. I was aware of what I said. Ah,   *   *   *

THE COURT: You've really acted as a reviewing Court to throw doubt on the voluntariness of a plea of guilty, and in your capacity as the reviewing Court there auditing work that had been done by this Court, auditing the work of a jury who found him guilty of a like offense, and auditing the whole judicial process. You have with a glib stroke of the tongue undone everything and found it all wrong and set it all aside.

MR. JUNE: No, that's not my,   *   *   *

THE COURT: That's the effect of what you've done, Mr. June. You have set yourself up as a superior citadel as to the guilt or innocence of people, as to the voluntariness of pleas. And you've entered into all the legal issues of this case, and rendered opinions that were mere conjecture on your part. And evidently you felt that you were in a better position than a Court who heard the matter, a jury of 12 people who heard the matter, and the defense counsel who is involved for a matter of some eight months, and the State's Attorney's Office involved in the matter of eight months. You have in probably eight hours of contact with the case, came to a lot of decisions about things being right or wrong and for those you admittedly based on your conjecture; and it just undone everything done here. Now, if we're going to have a continuance of this kind of program, where cases are sent, to, for social investigation to the Probation Office, and in that office they're going to come out with judicial decisions of the propriety of the Court and its conduct, and what's going on here? You're going to have a new system in Illinois being the Reviewing Court in the Probation Office. And it's going to be a strange Court that operates not on facts, not on investigation; but operates on conjectures made after talking to a defendant who admittedly had in mind in talking to you to manipulate you into getting him probation."

■■ The defendant strongly urges that the trial judge's reprimand be interpreted to indicate that since he had been found guilty on the Baptist Church Rectory burglary there was a strong assumption that he likewise was guilty of the Cathedral burglary. We do not so interpret the remarks of the court. Instead we find a situation where a probation officer exceeded his authority and cast unfavorable reflections on the verdict of

a jury. The defendant's guilt or innocence on the St. John's Church Rectory burglary charge had already been determined, it was no longer an issue and when the probation officer attempted to make it one he exceeded his authority and could well expect a reprimand. In examining the record in its entirety we fail to find any remarks made by the court that a jury finding the defendant guilty of one charge would indicate that he was guilty of a similar charge upon which there had been no trial.

We note from the record that before the trial court accepted the defendant's plea of guilty to the Cathedral burglary, the defendant was advised of his rights and of the consequences of the withdrawal of a not guilty plea. The record fails to disclose that at any time the defendant waivered in his desire to plead guilty. The defendant did not answer in the affirmative when asked if his counsel had rendered unsatisfactory service nor did the defendant answer in the affirmative when asked whether he had been induced to plead guilty. Prior to the reprimand episode it was the trial judge who in order to protect the rights of the defendant set aside his guilty plea to the Cathedral burglary charge and set the case for trial. One month later at a sentencing hearing, it should be noted that the defendant was again asked whether his plea of guilty was in any way involuntary or coerced. The defendant replied in the negative.

■■ The reprimand given by the judge was a regretful incident albeit necessary; however, in light of the admonishments given to the defendant, and the actions taken to protect his right to a fair trial we do not conclude that the trial judge had a predisposition as to his guilt. Further, in examining the record as a whole we cannot agree with the defendant that the reprimand remarks of the judge can be interpreted as showing such a predisposition.

The defendant cites the case of *People v. Chatman*, 36 Ill.2d 305, 223 N.E.2d 110, as authority for his contention that he was denied effective assistance of counsel when his appointed attorney failed to move for a change of venue after learning of the judge's predisposition of guilt. For *Chatman* to be applied in the instant case there would have to first be a finding of such predisposition on the part of the trial judge. We have found to the contrary so *Chatman* is not applicable; however, the cited case and the one we are considering can further be distinguished in that in *Chatman* the judge had decided the defendant's guilt in a bench trial. In the instant case the defendant's guilt of the St. John's Church Rectory burglary had been determined after trial by jury. We do not agree with the defendant that he was denied effective assistance of counsel.

The defendant's second issue presented in this appeal is that the trial

judge's predisposition of the defendant's guilt effectively deprived him of his rights to plead not guilty, to a jury trial and to due process of law. This issue is predicated upon an interpretation of the language used by the judge in his reprimand of the probation officer. Being unable to agree with the defendant as to his interpretation of such remarks we find that this issue is without merit.

Lastly the defendant claims that he was denied his right and privilege to a fair and speedy trial and to due process of law when he was not brought to trial within one hundred and twenty days of his arrest.

It is conceded by both the defendant and the State that this cause was called for trial on the one hundred and twenty-first day after the defendant's arrest; however, the one hundred and twentieth day after the defendant's arrest fell on a Sunday. On the following or one hundred and twenty-first day the state moved for a continuance on the ground that a material witness for the State was unavailable. Over the defendant's objection this motion was granted and the trial of the case was continued.

■■ The State concedes that the defendant never tolled the running of the statute but argues that when the one hundred and twentieth day falls on a Sunday that there is a statutory right to appear in court on the one hundred and twenty-first day and request a continuance. The statute relied on by the State in support of this contention is Chapter 131, Section 1.11, Illinois Revised Statutes, which provides:

> "Time, computation of. § 1.11. The time within which any *act* provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday or is a holiday as defined or fixed in any statute now or hereafter in force in this State, and then it shall also be excluded *  *  *." (Emphasis supplied.)

The determination of this issue presented by the defendant depends on whether the word "act" in Chapter 131, Section 1.11 of the Illinois Revised Statutes 1971 refers to the word "tried" in Chapter 38, Section 103—5, Illinois Revised Statutes 1971, which provides:

> "(a) Every person in custody in this State for an alleged offense shall be *tried* by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant,  *  *  *." (Emphasis supplied.)

■■ The defendant argues that the word "act" permits the trial of a defendant on the one hundred and twenty-first day if it falls on a Sunday or holiday, but that no motion for continuance can be presented by the State on the one hundred and twenty-first day. Does the word "act" in Chapter 131, Section 1.11 of Illinois Revised Statutes have a meaning

synonymous with the word "tried" found in Chapter 38, Section 103—5, Illinois Revised Statutes? We believe not, for such a construction in our opinion would be contrary to legislative intent. The definition of the word "act" encompasses a multitude of affirmative steps or measures while the word "tried" as used in the pertinent statute means an actual trial of a party. To accept the defendant's construction of Chapter 131, Section 1.11, Illinois Revised Statutes, would in our opinion result in an illogical situation where the State upon proper showing could obtain a continuance on the one hundred and nineteenth day or the one hundred and twentieth day but not on the one hundred and twenty-first day if the preceding day was a Sunday. We do not believe that such an illogical result is the intent of the legislature.

■■ Pursuant to Chapter 38, Section 103—5(c) the trial court granted a continuance to the State one hundred and twenty-one days after defendant's arrest and for the reasons set forth we cannot agree that such continuance denied him his right to a speedy trial. The granting of such a continuance is within the trial court's discretion. (*People v. Wollenberg*, 37 Ill.2d 480, 229 N.E.2d 490; *People v. Moriarity*, 33 Ill.2d 606, 213 N.E.2d 516.) A reviewing court will not lightly disturb this discretion unless there has been a clear abuse of the same. See *People v. Scott*, 110 Ill.App.2d 368.

In the instant case we disagree with the defendant's construction of the statutes cited and further are of the opinion that the trial court did not abuse its discretion in granting the State's motion for a continuance and therefore the defendant is not entitled to discharge because he was denied the right to a speedy trial.

For the reasons set forth the judgment of the circuit court of Will County is affirmed.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.