THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STANLEY DAVIS, Defendant-Appellant.

(No. 57620;

First District (2nd Division)—June 10, 1974.

Kenneth L. Gillis and Robert E. Davison, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (James Veldman, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendant, Stanley Davis, was charged with the murder of Derrick Merriweather and the attempt murder of Howard Collins. (Ill. Rev. Stat. 1971, ch. 38, pars. 9—1, 8—4.) A jury found him guilty of both offenses, and he was sentenced to consecutive terms of 35 to 100 years for murder and 10 to 15 years for attempt murder. On appeal defendant urges reversal of the convictions on the grounds that his convictions were based upon hearsay testimony; that a photograph of the deceased was improperly introduced into evidence; that defendant's fingerprints were obtained pursuant to an unlawful arrest, and therefore should have been excluded from evidence; and that defendant was improperly convicted and sentenced to consecutive terms for offenses which arose from the same conduct. Defendant also contends that the sentence imposed for murder is excessive.

On April 8, 1971, shortly before midnight, Howard Collins drove his mother's black Volkswagen automobile into a parking lot near 13359 South Greenwood Avenue in Chicago. Collins and his passenger, Derrick Merriweather, were seeking a friend. Thereupon a 1960 or 1961 gray Chevrolet automobile, with four persons inside, drove into the lot and blocked the only exit. All four men exited the Chevrolet; two walked up to Collins' side of the car, and the other two men walked to Merriweather's side. Collins and Merriweather remained in the car. One of the men near Collins fired a shotgun at him. Collins, although wounded, managed to escape from the car and run. As he fled from the scene, he heard more shots. Collins survived; but Merriweather was fatally wounded.

Collins identified defendant as one of his attackers. He testified at trial that he had known defendant for approximately 4 years, and that both attended Carver High School. He further testified that he recognized three of the men in the Chevrolet, and identified them as defendant, Albert Jackson and Bossey Jones. He observed defendant and Jackson holding shotguns as they arroached his car. Defendant and Jones approached Merriweather, and Jackson and another man approached Collins. Jackson fired a shot at Collins, and Collins then ran. He sought help, and a friend drove him to the emergency room of Roseland Community Hospital. There he told a police officer that defendant, Jackson and Jones had shot him.

Collins further testified that earlier on the day of the shooting he observed defendant and several other persons standing near the high school. Defendant approached Collins and asked for $5. Collins refused, and Jackson, who was with defendant, told Collins "I will kill you." Collins testified that he did not know why defendant had demanded $5.

On cross-examination Collins did not recall a prior statement by him that the $5 demanded by defendant was an extortion payment to a street gang. Collins also stated that defendant did not shoot at him, and that he did not see defendant shoot Derrick Merriweather.

Linda Merriweather, the wife of the deceased victim, and Ruth Jenkins, the mother of the deceased, both testified that Derrick Merriweather was alive on April 8, and that they observed him dead at the hospital shortly after midnight on April 9, 1971. His wife identified his body at the hospital and at the morgue, and in court, she identified a photograph of him as he appeared in the hospital. The photograph was later introduced into evidence. Mrs. Jenkins testified that she observed Howard Collins, an acquaintance of her son, in the emergency room of the hospital, and that Howard Collins called to her that "Stanley Davis, Bossey and Crow did it." On cross-examination she stated that Collins had mentioned the last name of only defendant, and that one of the police officers at the hospital told her that Collins had named defendant, Bossey and Crow as his attackers.

A pathologist from the coroner's office testified that he performed an autopsy on the body of Derrick Merriweather, and that in his opinion, death was caused by a shotgun wound.

The State then called as its witnesses five Chicago police officers who participated in the investigation of the crimes. The first officer on the scene, Raymond Crawford, testified that at approximately midnight, April 9, 1971, he responded to a call regarding a shooting at 13359 Greenwood. He found the deceased, Derrick Merriweather, lying near a black Volkswagen in a parking lot. He transported the victim to the emergency room of Roseland Community Hospital. In the emergency room, the witness observed Howard Collins who related that the shooting took place at 133rd and Greenwood. Collins responded affirmatively when the witness asked him if someone with him also had been shot. At this initial interview Collins did not identify defendant as one of his attackers. On cross-examination Officer Crawford recalled that Collins told him that Jackson and some friends had approached him about joining the P-Stone Nation street gang. On redirect examination, Officer Crawford modified this statement by testifying that Collins told him that earlier in the day he and Merriweather were approached "about paying some sort of money, not actually joining, but more like an extortion kind of thing."

A homicide investigator, Officer James Davis, testified that he interviewed Collins in the emergency room of the hospital at approximately 12:30 A.M. on April 9. Collins indicated who had shot him. This witness also testified to the events which occurred in the parking lot prior

to the attack, as told to him by Collins. The witness also stated that Collins had told him that he knew three of the four attackers, and had named defendant, Jackson and Jones. After leaving the hospital, Officer Davis commenced a search for defendant, but was unable to locate him at three addresses.

Sergeant John Kwak testified that he immediately began a systematic search of parking lots in the area for the Chevrolet automobile described by Collins. At approximately 4:45 A.M. on April 9, approximately one block from defendant's home, he found a 1960 gray Chevrolet fitting Collins' description. He observed no identifying marks on the car, and called in the crime-laboratory technicians to dust the automobile for fingerprints. The car was then towed to the pound. At trial, Officer Kwak identified two photographs of the automobile he found as "the vehicle in question which was used in the felony or homicide." On cross-examination he stated that no evidence other than fingerprints was found in the car.

Three police officers then testified to the fingerprint identification procedure. Officer Posiadlik testified that he fingerprinted defendant in the police lockup on May 11, 1971. Officer Ginnelly of the Crime Lab testified that he photographed and dusted for fingerprints both the black Volkswagen and the gray Chevrolet. He found latent fingerprints on both automobiles. A fingerprint expert, Officer Mortimer, then testified that he compared defendant's fingerprints taken at the lockup with the latent fingerprints found on the Chevrolet, and was able to identify one of the prints on the automobile as made by defendant. On cross-examination he stated that defendant's prints did not match any found on the Volkswagen, nor any of the other prints found on the Chevrolet.

Officer Cotton testified that he arrested defendant on May 11, 1971.

The State introduced into evidence the photograph of the deceased, photographs of the Volkswagen and the Chevrolet automobiles, and fingerprints identified as defendant's. The State then rested, and defendant presented no evidence on his behalf.

Initially, defendant contends that he was denied a fair trial by the introduction into evidence of hearsay testimony. Defendant argues that certain hearsay testimony identifying him as a perpetrator of the crimes was incompetent and prejudicial. The first instance relied upon by defendant is Ruth Jenkin's testimony that Collins called to her in the emergency room that defendant, Crow and Bossey were the offenders. The second assignment of error is the testimony of Officer Davis that Collins told him that he knew three of the offenders and named defendant as one of the men. The State argues that this testimony was not inadmissible hearsay, but rather fell within the spontaneous declaration

exception to the hearsay rule. Assuming, *arguendo*, that Collins' statements were not spontaneous declarations, we nevertheless do not agree with defendant that reversible error was committed.

■■ An objection to hearsay testimony is waived unless made at the time it is offered. (*People v. Jones*, 2 Ill.App.3d 575, 277 N.E.2d 144.) From the report of proceedings in this cause it is clear that no hearsay objection was made to the testimony of Ruth Jenkins. Moreover, it appears that defense counsel delved more thoroughly into the statement made to the witness by Collins:

"DEFENSE COUNSEL: [E]xactly what did Mr. Collins say regarding the name or names of the people he claimed were—

WITNESS: He kept calling their name and my son that was with me, he grabbed my arm, he said, Howard wants you. Howard kept calling my name, Crow, Stanley and Boss.

DEFENSE COUNSEL: Crow, Stanley and Boss. Did he use any first or last name with Crow?

WITNESS: No.

DEFENSE COUNSEL: I gather you did not know?

WITNESS: I didn't know any of them.

DEFENSE COUNSEL: Did he use any last name with Stanley?

WITNESS: Stanley Davis.

DEFENSE COUNSEL: Are you positive of that?

WITNESS: Yes. * * *""

Likewise, the hearsay testimony of Officer Davis regarding Collins' identification of defendant was not objected to by defense counsel. Defendant now maintains that his counsel objected to this testimony and requested a mistrial on that basis. The record clearly indicates, however, that defense counsel objected to officer Davis' testimony concerning a call he received from Officer Kwak about recovery of the Chevrolet. On cross-examination defense counsel again questioned Officer Davis as to Collins' statement to him:

"DEFENSE COUNSEL: Did he tell you there were four men that attacked him or three?

WITNESS: He said that four men got out of the car. Three men came towards him. Two of those three had guns."

■■ Moreover, we do not consider these hearsay statements to be plain error pursuant to Supreme Court Rule 615(a). (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a).) Our courts have held that the admission of hearsay identification testimony constitutes reversible error only when it serves as a substitute for courtroom identification or when it is used to strengthen and corroborate a weak identification. However, if the hearsay is merely cumulative, and is supported by a positive identification

and by other corroborative circumstances, it constitutes merely harmless error. *People v. Canale*, 52 Ill.2d 107, 285 N.E.2d 133; *People v. Coleman*, 17 Ill.App.3d 421, 308 N.E.2d 364, and cases cited therein.

■■ A positive identification by one witness with sufficient opportunity to observe defendant is sufficient to sustain conviction. (*People v. Mack*, 25 Ill.2d 416, 185 N.E.2d 154.) In the instant case the in-court identification of defendant by Howard Collins was positive and clear. He had known defendant prior to the attack, and the contradictions in Collins' testimony as to gang involvement were placed before the jury. The jury, nonetheless, found his testimony to be credible, and we believe such a determination was proper. Additionally, Collins' testimony was corroborated in part by evidence of defendant's fingerprint in the Chevrolet automobile. We therefore conclude that the hearsay testimony was not reversible error.

Defendant also alleges that the Chevrolet automobile found by Officer Kwak was connected to defendant and the crimes by the admission of hearsay testimony. Defendant argues that Officer Kwak had no personal knowledge that the Chevrolet was the "vehicle in question which was used in the felony or homicide."

■■ It has long been the rule that photographs of physical evidence are admissible provided the prosecution adduces by competent evidence a nexus between the objects to be introduced and defendant and the crimes. (*People v. Miller*, 40 Ill.2d 154, 238 N.E.2d 407.) This nexus is shown when a witness identifies the photographs as portrayals of certain facts relevant to the issue, and in addition, verifies the photographs as correct representations of such facts. (*People v. Donaldson*, 24 Ill.2d 315, 181 N.E.2d 131; McCormick, Evidence 387.) Therefore, the primary issues are relevancy and accuracy.

In the instant case, Officer Kwak testified that he observed an automobile fitting Collins' description approximately one block from defendant's home. Officer Ginnelly then testified that he found latent prints on that auto, and Officer Mortimer stated that he identified one of those prints as defendant's. Officer Kwak also identified the photograph of the automobile as the automobile he observed, thereby verifying the accuracy of the photograph.

■■ Defendant's argument is based upon the misconception that Officer Kwak's statement was the sole evidence connecting the automobile to defendant and the crimes. It appears from the record that Collins was not asked to identify photographs of the Chevrolet automobile. We agree with defendant that the appropriate procedure would have been for Collins to identify the car depicted in the photograph and thus connect the automobile to the crimes. However, we do not believe that this omission

was fatal to the admissibility of the photograph of the Chevrolet automobile. The police officer's testimony as summarized above was competent, circumstantial evidence which provided the required nexus between the Chevrolet automobile and defendant.

Defendant next assigns as error the introduction into evidence of the photograph of the deceased. While defendant acknowledges the general rule that the admissibility of a photograph of a decreased is within the sound discretion of the trial court, and that such discretion will not be disturbed unless an abuse to defendant's prejudice is shown (*People v. Nicholls*, 42 Ill.2d 91, 245 N.E.2d 771), he argues that the identity of Derrick Merriweather and the cause of his death were not in issue, and that, therefore, the photograph was nonprobative.

■■ We note that defendant pleaded not guilty and therefore, the State had a right to prove every element of the crimes charged. (*People v. Scheck*, 356 Ill. 56, 190 N.E. 108.) Moreover, we have examined the black and white photograph of the deceased, and do not find it so gruesome and inflammatory as to unduly prejudice defendant. (*People v. Puckett*, 6 Ill.App.3d 206, 285 N.E.2d 258.) Therefore, the trial court did not abuse its discretion in allowing the photograph into evidence.

It is next urged by defendant that his arrest was unlawful in that the warrant issued for his arrest was based upon a defective complaint. Defendant reasons that, therefore, his fingerprints taken subsequent to his arrest should have been excluded from evidence. While conceding that the complaint may have been deficient, the State maintains that defendant's arrest was valid, and thus defendant's fingerprints were properly admissible.

Specifically, defendant contends that the complaint failed to set forth sufficient facts on which to base a finding of probable cause for arrest. The complaint, signed by one Officer Grunhard, stated: "Stanley Davis * * * committed the offense of murder in that he shot and killed one Derrick Merriweather with a gun, without lawful justification."

No arrest warrant may issue without probable cause (*Giordenello v. United States*, 357 U.S. 480), and probable cause cannot be made out by merely conclusory statements that probable cause exists. (*United States v. Ventresca*, 380 U.S. 102.) Defendant relies upon *People v. Waitts*, 36 Ill.2d 467, 224 N.E.2d 257, wherein our supreme court held that "an arrest warrant, which is issued on the basis of a complaint which merely states that the complainant has just and reasonable grounds to believe that a person committed an offense, is constitutionally defective." 36 Ill.2d 467, 470.

■■ We are of the opinion that we need not direct our attention to the sufficiency of the complaint. It is clear that the survivor of the attack,

Howard Collins, named defendant as one of the perpetrators of the crime. This information was transmitted to the arresting officer through official lines of communication. (See *People v. Payne*, 6 Ill.App.3d 378, 286 N.E.2d 35; *People v. Knight*, 3 Cal.App.3d 500, 83 Cal. Rtpr. 530.) At that time reasonable grounds to arrest defendant *without* a warrant existed, and the arrest of defendant was justified. (Ill. Rev. Stat. 1971, ch. 38, par. 107—2(c); *People v. Wright*, 41 Ill.2d 170, 242 N.E.2d 180.) *People v. Waitts, supra,* is distinguishable from the instant case in that in *Waitts* the record indicated no facts upon which probable cause to arrest without a warrant could be based. See also *Giordenello v. United States, supra*; compare *Whiteley v. Warden*, 401 U.S. 560, with *People v. Chimel*, 68 Cal.2d 436, 67 Cal.Rptr. 421, *reversed on other grounds, Chimel v. California*, 395 U.S. 752.

Defendant next argues that consecutive sentences were improperly imposed and urges reversal of his attempt murder conviction for the reason that both his murder and attempt murder convictions arose from the same conduct. Defendant specifically submits that the only conduct by him was his presence at the scene. However, defendant overlooks Collins' testimony that defendant was holding a shotgun when defendant and Bossey Jones approached the side of the car on which Derrick Merriweather was seated.

■■ Section 5—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2(c)) provides in pertinent part:

"A person is legally accountable for conduct of another when:

\* \* \*

(c) Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense. \* \* \*"

In the instant case the jury was instructed as to this provision and found defendant guilty as charged. The evidence was sufficient to show the accountability of defendant for the acts of the group. *People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601; *People v. Spagnola*, 123 Ill.App.2d 171, 260 N.E.2d 20.

We are of the opinion that the murder of Derrick Merriweather and the attempt murder of Howard Collins were separate offenses, although related in time. Each offense involved separate elements, and the offenses were committed against separate victims. (*People v. Bellamy*, 8 Ill.App. 3d 606, 290 N.E.2d 645.) Therefore, defendant's convictions for murder and attempt murder were proper, and consecutive sentences were not improper. Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(a).

Finally, defendant requests this court to exercise its power to reduce

punishments pursuant to Supreme Court Rule 615(b)(4), and reduce his sentence for murder from 35 to 100 years as imposed by the trial court to the statutory minimum of 14 years. (Ill. Rev. Stat. 1971, ch. 110A, par. 615(b)(4).) Defendant bases his argument of excessiveness of sentence on the grounds that he was 20 years of age at the time of the offense, had no prior criminal record, and no evidence was adduced that he was an active participant in the commission of the offenses.

■■ The power of the reviewing court to disturb a sentence imposed by the trial court should be exercised with caution and circumspection due to the superior position of the trial court, during the course of the trial and of the hearing in aggravation and mitigation, to assess the appropriate punishment. *People v. Fox*, 48 Ill.2d 239, 269 N.E.2d 720.

In the instant case the sentence imposed for murder was within the limits set by the legislature. The trial court stated: " I am not sure whether it was a recruiting of gentlemen in gangs or what, but I know it was an absolute execution." We find that the sentence imposed was not excessive and that the trial court did not abuse its discretion in imposing its sentence. Therefore we will not exercise our power to reduce the sentence. (See *People v. Caldwell*, 39 Ill.2d 346, 236 N.E.2d 706.) Accordingly, the judgments of conviction and the sentences thereon are affirmed.

Affirmed.

HAYES, P. J., and DOWNING, J., concur.