THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ISAAC MILES, Defendant-Appellant.

First District (3rd Division) No. 87—0123

Opinion filed November 16, 1988.—Rehearing denied January 6, 1989.

Michael J. Pelletier and Gordon H. Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Assistant State's Attorney, and Gael M. O'Brien, Special Assistant State's Attorney, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, defendant, Isaac Miles, was convicted of the murder of Bradley Washington (Ill. Rev. Stat. 1983, ch. 38, par. 9—1) and sentenced to 40 years' impris-

onment. He appeals.

At trial, Raymond Washington, no relation to the victim, testified for the State. On December 15, 1985, at approximately 9:45 in the evening, he was walking toward the Dreamweavers Motorcycle Club, which was also a pool hall, on the south side of Chicago. At that time, he saw the victim standing at a phone booth in front of the pool hall "getting ready to dial the telephone" and the defendant standing behind him. Both the victim and defendant were facing Washington at this time. As Raymond Washington walked toward the pool hall, he saw defendant walk behind the victim, pull a gun out of his jacket pocket with his right hand and shoot the victim in the back of the head. Washington was approximately 10 feet away from defendant and the victim at that time. After the shooting, defendant ran through the alley next to the pool hall. When the victim fell, he was holding the phone in one hand and a cigarette in the other. The victim was not armed, had not said anything to defendant and had not made any threatening gestures toward defendant before he was shot. Immediately thereafter, Washington entered the pool hall but did not tell anyone about the shooting. The police arrived approximately five minutes after the shooting but Washington did not tell them what he had seen because he did not want to get involved. He also testified that the lighting was "bright" and that he had gotten a good look at defendant's face. A couple of days after the shooting, Washington told the police what he had seen. He looked through police mugshot books but failed to identify anyone as the shooter. On December 31, Washington identified defendant out of a lineup as the shooter. Washington also testified that he had not made any anonymous phone calls to the police before the 31st. On cross-examination, Washington reiterated that the street lighting where the shooting occurred was bright and that defendant and the victim were approximately 10 feet away from him at the time of the shooting. He also testified that he was able to identify defendant out of the lineup because he "got a good look at his face."

Chicago police officer Raymond Jasten also testified for the State. When he and his partner arrived at the shooting scene the victim was lying with his feet at the base of the telephone booth and was holding a smoking cigarette in his right hand. He also testified that the telephone was hanging off the hook and that there was a fluorescent light over the telephone and "a street light right over the area." Chicago police detective Thomas Brankin corroborated Jasten's testimony regarding the lighting at the crime scene and the fact that the phone was dangling off the hook after the shooting. Detective Brankin also

testified that when Raymond Washington viewed the lineup on the 31st, he did not wait until its completion before positively identifying defendant but identified him as soon as he saw him.

Chicago police detective Thomas Ptak testified that while on duty on December 30th, he received an anonymous phone call. The caller told the detective that the man "shot at 69th and Union was shot by a man by the name of Isaac Miles, whose name was—whose nickname was called, Ike." As a result of the phone call, the police arrested defendant the same day.

On his own behalf, defendant testified that he could not actually remember where he was on December 15, 1985. However, he assumed he was at home, 5740 South Lafayette, from 9 to 10 at night. He then stated, however, that he could not say he spent the entire night at home. Defendant denied shooting Bradley Washington, whom he admitted having known since 1977. On cross-examination, defendant admitted telling the police a different story, after he was arrested, of his whereabouts on the night of December 15. Specifically, he told them that if he left his apartment that night, he and his girlfriend, Irene Ealey, walked to 57th and State at about 7 p.m. and called for a cab from there which arrived about an hour later. They took the cab to 4544 South Ellis, where they stopped to see someone named Brownie. After finding that Brownie was not home, they took the cab to the home of Irene Ealey's mother at 7839 South Muskegon, where Irene got out of the cab. Defendant took the cab back to Brownie's, who was still not home. He then took the cab to his mother's home at 4810 South Calumet, arriving there at about 11 or 12 p.m., and remained there the rest of the evening.

Irene Ealey testified for the State in rebuttal. She admitted being defendant's girlfriend in December 1985. However, she denied having gone on the evening of December 15 to any of the locations enumerated by defendant. She also denied knowing a person named Brownie.

OPINION

■■ ■ On appeal, defendant first contends that the State committed plain error in introducing hearsay testimony of the anonymous phone call to the police in which defendant was named as Bradley Washington's murderer and also in referring to the phone call in closing argument.

Hearsay is testimony of an out-of-court statement offered to prove the truth of the matter asserted, the value of which rests on the credibility of the out-of-court asserter. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) The reason for excluding hearsay evi-

dence is the absence of an opportunity to determine its veracity. (*Rogers*, 81 Ill. 2d at 577.) Generally however, the admission of hearsay evidence, although error, is harmless beyond a reasonable doubt where there is overwhelming evidence of guilt (*People v. Requena* (1982), 105 Ill. App. 3d 831, 435 N.E.2d 125, *cert. denied* (1983), 459 U.S. 1204, 75 L. Ed. 2d 436, 103 S. Ct. 1191; *People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521) or, as otherwise stated, where there is no reasonable possibility that the jury's verdict would have been different had the hearsay been excluded (*People v. Hall* (1980), 90 Ill. App. 3d 1073, 414 N.E.2d 201, *cert. denied* (1981), 454 U.S. 893, 70 L. Ed. 2d 207, 102 S. Ct. 388; *People v. Griggs* (1982), 104 Ill. App. 3d 527, 432 N.E.2d 1176; see also *People v. White* (1985), 134 Ill. App. 3d 262, 283, 479 N.E.2d 1121, *cert. denied* (1986), 475 U.S. 1126, 90 L. Ed. 2d 194, 106 S. Ct. 1650).

 Applying these principles here, we conclude that the introduction of the evidence of the anonymous phone call to the police implicating defendant was not plain error requiring reversal of defendant's conviction. At bottom, defendant's argument rests on the contention that, while the identification testimony of one eyewitness is sufficient to sustain a conviction, it is not overwhelming evidence of guilt for purposes of determining the prejudical effect of hearsay testimony. We disagree.

The admission of hearsay identification evidence constitutes plain error only where it is used to strengthen a weak eyewitness identification or as a substitute for a courtroom identification. However, it is harmless error where such evidence is merely cumulative or supported by a positive identification and other corroborative circumstances. (See, *e.g.*, *People v. Anthony* (1980), 90 Ill. App. 3d 859, 418 N.E.2d 757; *People v. Daliege* (1976), 40 Ill. App. 3d 706, 352 N.E.2d 247; *People v. Davis* (1974), 20 Ill. App. 3d 948, 314 N.E.2d 723; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) Another line of appellate court cases holds that where a conviction rests solely on the identification testimony of one witness, with no important corroborating circumstances, and such testimony was impermissibly bolstered by the admission of hearsay evidence, a new trial will be ordered. (See, *e.g.*, *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746 (and cases cited therein).) However, we believe that *People v. Gaines* (1981), 88 Ill. 2d 342, 430 N.E.2d 1046, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285, justifies the conclusion that the former rules represent the applicable principles in this area of criminal law.

In *Gaines*, a police officer testified that the defendant's brother

had implicated him in the two murders with which the defendant was charged. The defendant contended that this hearsay testimony would deny him the right of confrontation under *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. The supreme court held:

> "We need not decide whether the admission of this \*\*\* testimony violated the *Bruton* rule, however, since the uncontroverted eyewitness testimony of Thomas was sufficient to sustain the defendant's conviction of murder, and the admission of [this] testimony would be harmless error. *Brown v. United States* (1973), 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565; *Schneble v. Florida* (1972), 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056; *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726." (*Gaines*, 88 Ill. 2d at 366.)

In holding that the uncontroverted testimony of one eyewitness was sufficient to sustain a conviction for murder despite hearsay testimony implicating the defendant in the offense charged, *Gaines* implicitly establishes that the testimony of one eyewitness may constitute overwhelming evidence of guilt for purposes of determining the prejudicial effect of such hearsay testimony.

The eyewitness testimony of Raymond Washington was positive, unequivocal, uncontroverted and unimpeached. His testimony was corroborated in several important respects by other record evidence. Specifically, he was correct that the victim was shot in the back of the head. His testimony as to the lighting at the crime scene, a fact bearing directly on his opportunity to have observed the perpetrator, was corroborated by the police officers who investigated the scene. Their testimony also tended to corroborate Washington's testimony that the victim was standing in front of the phone booth getting ready to dial and was holding a cigarette in one hand when he was shot. In view of Washington's testimony and its corroboration by other evidence, we do not believe there is any reasonable possibility that the jury would have returned a different verdict had the testimony and argument complained of been excluded. Washington's testimony constituted overwhelming evidence of defendant's guilt. As such, under *Gaines* and the line of appellate court cases previously cited, the admission of the hearsay testimony complained of was harmless beyond a reasonable doubt. Moreover, in view of that conclusion, we do not believe that the State's reference to the anonymous phone call in closing argument so prejudiced defendant that it constitutes plain error.

■■ ■ Defendant next contends that he was denied the effective assistance of counsel. Defendant specifies four instances of his trial

counsel's ineffectiveness: (1) not objecting properly to the testimony of the anonymous phone call; (2) not challenging a prospective juror who had been shot in the past, who therefore expressed uncertainty about his ability to decide the case fairly and who asked to be excused; (3) assuming a burden of proof in opening argument; (4) mishandling and misunderstanding the issue of defendant's prior conviction.

The tests for determining whether a defendant has received ineffective assistance of counsel and the circumstances under which such assistance entitles him to a new trial were established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under *Strickland,* a defendant must show that his counsel's representation fell below an objective standard of reasonableness *and* that counsel's errors prejudiced him by depriving him of a fair trial, *i.e.,* "a trial whose result is reliable." (*Strickland,* 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) To satisfy the prejudice prong of the *Strickland* test, a defendant must show "a reasonable probability" that, but for counsel's errors, the trial result would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the result." This determination is to be made by considering all of the evidence before the jury. (*Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.) Finally, a court may dispose of an ineffectiveness claim by determining that the defendant was not prejudiced by the alleged ineffectiveness. *Strickland,* 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Since we may dispose of defendant's claims on the ground of insufficient prejudice and since we must determine the existence of prejudice from all the evidence, we reject defendant's contention that he is entitled to a new trial due to his trial counsel's ineffective representation. We have concluded that the testimony of the anonymous phone call was harmless error in view of the overwhelming evidence of guilt, *i.e.,* that defendant was not prejudiced thereby. As defendant was not prejudiced by that testimony, trial counsel's alleged ineffectiveness in not objecting "properly" thereto does not entitle defendant to a new trial.

Moreover, in view of all the evidence adduced at trial, we do not believe there is any reasonable possibility that a jury without the juror complained of would have had a reasonable doubt of defendant's guilt. In so concluding, we rely particularly on Raymond Washington's totally uncontroverted and unimpeached identification of defendant. In language relevant to this issue, *Strickland* states:

"The assessment of prejudice should proceed on the assumption

that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. *It should not depend on the idiosyncrasies of the particular decisionmaker, such as unusual propensities toward harshness or leniency.*" (Emphasis added.) *Strickland,* 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ We also reject the assertion that trial counsel's assumption of a burden of proof prejudiced defendant so as to entitle him to a new trial. Trial counsel stated in his opening statement:

"I think the Court instructed you that the burden is upon the State to prove other than a not guilty finding.

And the State has the obligation, and you quite well answered the judge that you would abide by the testimony you should hear.

\* \* \*

I might suggest to you that a man cannot shoot another man at State and Madison if he's in Evanston at the same time.

You got to prove he was there. And we will be able to prove he was not there. That this defendant was not present when the shooting took place."

It is the last two sentences in the quoted language which defendant asserts constituted an assumption of a burden of proof and thus ineffective representation. Even assuming that to be the case, we do not believe that any prejudice to defendant resulting therefrom was sufficient to undermine confidence in the trial result.

Defendant compares the alleged assumption of a burden of proof here to a jury instruction that it is incumbent upon defendant to support an alibi defense by facts and circumstances sufficient, when considered with the other evidence in the case, to create a reasonable doubt of guilt. Such an instruction "speaks in the language of burden of proof" and is contrary to the requirement that the State must prove the defendant's guilt beyond a reasonable doubt. (*People v. Hazen* (1969), 104 Ill. App. 2d 398, 402, 244 N.E.2d 424.) In contrast to such an instruction, however, the complained-of statement by defendant's trial counsel did not speak in the language of burden of proof either explicitly or implicitly. Moreover, the jury was explicitly instructed that the State had the burden of proving defendant guilty beyond a reasonable doubt, that this burden remained on the State throughout the trial and that defendant was not required to prove his innocence. As such, and in view of the overwhelming evidence against defendant, we do not believe that trial counsel's alleged assumption of

a burden of proof so prejudiced defendant that he is entitled to a new trial.

 Defendant next contends that trial counsel mishandled and misunderstood the issue of defendant's prior conviction for aggravated battery. This contention is based on trial counsel's overruled objection to the State's introduction, after defendant testified, of the certified record of his 1983 conviction for aggravated battery. In objecting thereto, defense counsel stated:

> "If the Court please—I'll object at this point. I submit if the Court please, if I am out of order, I don't think I am but the man isn't being tried."

Defendant asserts this objection was fumbling, belated unclear and confused. It also manifested, he claims, trial counsel's surprise at the State's introduction of the record and his ignorance of the ramifications of defendant's prior conviction on the decision to have him testify. See *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

At bottom, the prejudice claimed by defendant from this instance of alleged incompetence is that it allowed the jury to use his prior conviction as substantive evidence of his guilt of the murder of Bradley Washington. The difficulty with this argument is the same as with defendant's other allegations of ineffective assistance. That is, claims that evidence of a prior conviction was improperly admitted at trial are also subject to a harmless error determination where evidence of guilt is overwhelming. (See, *e.g., People v. Madison* (1974), 56 Ill. 2d 476, 488-89, 309 N.E.2d 11; *People v. Beltran* (1977), 51 Ill. App. 3d 810, 367 N.E.2d 273; *People v. Clark* (1976), 41 Ill. App. 3d 419, 423-24, 354 N.E.2d 134.) As such, we find insufficient prejudice from this instance of alleged ineffective assistance of counsel to warrant a new trial.

 Defendant also questions his trial counsel's decision to call him as a witness based on his objection to the State's introduction of defendant's prior conviction. He asserts that, while the decision to testify is ultimately for a defendant (*People v. Brown* (1973), 54 Ill. 2d 21, 23, 294 N.E.2d 285), he must necessarily rely on the advice of his attorney in making that decision. Therefore, he concludes, counsel's knowledge of the law as established in *Montgomery* and the proper procedure thereunder have a great impact on the decision to have his client testify.

We agree with defendant in principle. However, we find trial counsel's objection to the introduction of defendant's prior conviction a wholly inadequate basis on which to conclude that the decision to call defendant as a witness constituted ineffective assistance of coun-

sel. That conclusion would require an inference from counsel's objection that he was ignorant of the ramifications of the decision to have defendant testify, *viz.*, that the State could introduce his prior conviction as impeachment evidence under *Montgomery* and that there was a danger that the jury would use that conviction as substantive evidence of guilt of the instant offense. However, we believe such an inference would be speculative and conjectural and thus improper in determining the issue of ineffective assistance. (*People v. Krankel* (1985), 131 Ill. App. 3d 887, 892, 476 N.E.2d 777; *People v. Gierbolini* (1984), 128 Ill. App. 3d 794, 797, 471 N.E.2d 625.) We so conclude especially in view of the fact that trial counsel agreed, at a point in the trial before defendant testified, to the jury instructions tendered by the State. Included therein was an instruction that the jury could consider the evidence of defendant's prior conviction only insofar as it affected his credibility as a witness, not as evidence of the murder charge. That instruction put trial counsel on notice, even if not aware beforehand, that, if defendant did testify, he could be impeached with his prior conviction. As such, it is untenable to argue that trial counsel did not know the ramifications of that decision.

 Defendant also cites trial counsel's apparent failure to object at the instructions conference to the introduction of defendant's prior conviction as a further example of his incompetence. However, defendant offers no real support for the implicit conclusions in his argument, other than the danger present whenever such evidence is introduced that it may be used as substantive evidence of guilt despite an instruction prohibiting such use. Those implicit conclusions are that the prejudicial effect of that evidence outweighed its probative value and that an objection thereto would thus have been successful. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516-18, 268 N.E.2d 695.) As such, defendant's contention that the decision to have him testify despite his prior conviction constituted ineffective assistance is further conjectural and meritless.

 Citing, *inter alia, People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045, *People v. Jameson* (1987), 155 Ill. App. 3d 650, 508 N.E.2d 267, and *People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350, defendant next contends that the trial court erred in failing either to investigate defendant's *pro se* allegations of trial counsel's incompetence made immediately after the denial of his posttrial motion or to appoint new counsel to do so. Defendant concludes that because the court took no action on defendant's *pro se* allegations, and in view of trial counsel's incompetence as reflected in the record, he is entitled to a new trial.

We disagree. Preliminarily, we note that the allegations of incompetence based on the record do not support defendant's *pro se* allegations thereof. More importantly, we do not believe the trial court was required to take the action asserted by defendant in dealing with his *pro se* allegations of incompetent counsel.

In *People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178, the defendant alleged orally at the hearing on his motion for new trial, which did not raise the issue, that his appointed trial counsel was ineffective. The trial court denied the written motion for new trial but did not rule on the *pro se* request for new trial. The court ultimately remanded for a new hearing with substitute counsel. In deciding the issue, the court relied on several cases which clearly involved defendants represented, at trial, by appointed counsel. In the remaining case cited in *Fields, People v. Lewis* (1980), 80 Ill. App. 3d 807, 400 N.E.2d 454, the State appellate defender's office represented defendant on appeal and the defendant had "requested" new counsel of the trial court. It is thus reasonable to infer that he also had appointed trial counsel. Also involving appointed, rather than privately retained, counsel and the same or a similar issue as here are the following cases: *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045; *People v. Lewis* (1988), 165 Ill. App. 3d 97, 518 N.E.2d 741; *People v. Brandon* (1987), 157 Ill. App. 3d 835, 510 N.E.2d 1005; *People v. Jameson* (1987), 155 Ill. App. 3d 650, 508 N.E.2d 267; *People v. Mallette* (1985), 131 Ill. App. 3d 67, 475 N.E.2d 237; *People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350; and *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.

In *Krankel*, the defendant filed a *pro se* motion for new trial after his appointed trial counsel filed a motion for new trial. A hearing was held on both motions. Defendant, arguing *pro se*, contended that trial counsel was ineffective because he failed to contact an alibi witness and to assert an alibi defense. Both motions were denied. On appeal, the State and the defendant agreed that he should have had counsel, other than his originally appointed counsel, to represent him on his ineffectiveness claim. The supreme court also agreed and remanded the cause for such a hearing. *Simpson* and *Jameson* relied on *Krankel* to reach the same result.

In *Mallette*, the defendant contended, after having been allowed to argue a *pro se* post-trial claim that his appointed trial counsel was ineffective, that the trial court should have appointed substitute counsel instead. Disagreeing, the appellate court found, *inter alia*, that *Krankel* did not establish a *per se* rule of entitlement to new counsel whenever a defendant makes *pro se* claims of ineffective assistance of

counsel without regard to their basis or to whether he had requested new counsel of the trial court.

In several cases dealing with the issue presented here, there is no indication whether trial counsel was appointed or privately retained. (See *People v. Jackson* (1987), 158 Ill. App. 3d 394, 511 N.E.2d 923 (*Jackson I*); *People v. Davis* (1986), 151 Ill. App. 3d 435, 502 N.E.2d 780; *People v. Dixon* (1985), 133 Ill. App. 3d 450, 478 N.E.2d 909.) *Dixon* rejected the contention, predicated upon *Fields*, that trial counsel should have been "replaced" after defendant alleged his ineffectiveness. *Davis* rejected the contention of error in the denial of a post-trial claim of ineffective counsel without the appointment of new counsel to represent the defendant on that claim. The court noted the *Mallette* holding of no *per se* requirement of appointment of new counsel on such a claim. It also noted that a *per se* conflict of interest does not exist merely because a defendant questions his trial counsel's competence post-trial and that such a conflict is determined by the underlying allegations of incompetence. Moreover, the court found the allegations of incompetence substantively meritless. In *Jackson I*, the defendant argued that the trial court erred in refusing to rule on his *pro se* motion for new trial based on ineffective counsel and in not appointing new counsel for purposes of the motion. The court remanded for a post-trial hearing on defendant's motion in keeping with the guidelines established in *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466 (*Jackson II*).

In *Jackson II*, the defendant asserted, separately from a post-trial motion, that his *retained* trial counsel was ineffective for failing to call certain witnesses. The defendant contended the trial court should have appointed new counsel to represent him on his post-trial claims of incompetent counsel rather than allow his counsel to explain his failure to call the witnesses. Defendant reasoned that requiring trial counsel to justify his actions placed him in a conflict of interest situation which required the appointment of substitute counsel. The court disagreed, holding that, in allowing trial counsel to explain his actions, the trial court was merely fulfilling its duty under *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610, to determine whether a request for new counsel should be denied because the claim of ineffectiveness on which it was based merely dealt with trial tactics or strategy.

Inasmuch as *Johnson* and *Krankel* involved appointed trial counsel, we believe the *Jackson II* court erred in relying on them to determine the alternatives open to a trial court upon a post-trial charge of ineffective assistance in a case involving privately retained trial coun-

sel. Rather, we believe the *Jackson II* court should have rejected defendant's claim on the basis of its observation *in dictum* that a court has no power to dismiss a privately retained attorney and that only the attorney and the client have the power to end the relationship. (*Jackson*, 131 Ill. App. 3d at 140.) That observation finds ample support elsewhere. In Illinois, it is not the duty of the courts to advise or exercise any authority or control over the selection of counsel by a defendant who is able to and does employ counsel of his own choosing. *People v. Walsh* (1963), 28 Ill. 2d 405, 409, 192 N.E.2d 843; *People v. Friedrich* (1960), 20 Ill. 2d 240, 253, 169 N.E.2d 752; *People v. Jeffrey* (1981), 94 Ill. App. 3d 455, 467, 418 N.E.2d 880; *People v. Potts* (1974), 17 Ill. App. 3d 867, 870, 309 N.E.2d 305; *People v. Barnes* (1915), 270 Ill. 574, 579-80, 110 N.E. 881.

Even in the unusual situation where a trial court, *sua sponte*, determines that retained counsel is ineffective, it cannot force a defendant to retain counsel other than counsel of his own choosing. (*People v. Johnson* (1979), 75 Ill. 2d 180, 185, 387 N.E.2d 688; *People v. Davis* (1983), 114 Ill. App. 3d 537, 544, 449 N.E.2d 237.) Moreover, while a court may appoint counsel for a defendant even in the absence of a request, such an appointment cannot operate to deprive a defendant of his right to choose other privately retained counsel to represent him. (*Potts*, 17 Ill. App. 3d at 867.) In view of the foregoing, we do not believe that the *Krankel-Simpson-Jameson* line of cases required the trial court to, *sua sponte*, appoint substitute counsel for defendant.

Nor do we believe that the trial court was otherwise required to interrogate defendant's trial counsel regarding defendant's *pro se* allegations of incompetence. Parenthetically, we note that *Krankel* did not hold to that effect. Moreover, we believe that *People v. Brandon* (1987), 157 Ill. App. 3d 835, 510 N.E.2d 1005, is dispositive of this issue notwithstanding that it involved appointed counsel. In *Brandon*, the defendant, like defendant here, made unsworn *pro se* allegations of incompetence concerning matters *dehors* the record. These allegations were made after the trial court had denied a motion for new trial which had been filed and argued by his trial counsel. That motion did not include a claim of incompetent counsel. After hearing the defendant's allegations and permitting trial counsel to respond, the trial court declined to rule on defendant's *pro se* motion for new trial and stood on its prior denial of the motion argued by counsel. On appeal, the defendant contended the trial court erred in failing to appoint independent counsel to represent him on his *pro se* motion for new trial. The court ultimately rejected the defendant's allegations of

incompetence on the merits. Prior to so doing, however, it noted, *inter alia* that a defendant seeking a new trial on the basis of factual allegations not in the record must submit sworn affidavits to support those allegations, citing *People v. Boyce* (1977), 51 Ill. App. 3d 549, 562, 366 N.E.2d 914.

Defendant here did not submit any sworn affidavits to support his *pro se* allegations of incompetent counsel based on grounds which were *dehors* the record. Under *Brandon*, we do not believe the trial court was required to interrogate defense counsel concerning those allegations. As the *Barnes* court stated, "[c]ertainly it is the duty of the court in any criminal case to prevent oppression of the defendant and see that he has a fair trial, but we find nothing in the record to indicate this duty was not performed by the court." (*People v. Barnes* (1915), 270 Ill. 574, 580, 110 N.E. 881.) Moreover, we believe the trial court properly relied on its observations of defense counsel as to those allegations of incompetency based on his conduct of the defense at trial. Thus, we find no merit in the contention that the trial court was required to either interrogate defense counsel or to appoint substitute counsel to represent defendant concerning his *pro se* allegations of incompetency.

▮▮ Defendant lastly contends that he is entitled to be discharged under the provisions of section 103—5 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 103—5).

On November 12, 1986, the State moved, pursuant to subparagraph (c) of section 103—5, for a 60-day extension of the 120-day term within which subparagraph (a) of section 3—105 required that defendant be tried. That term was due to expire on November 15. At that time, the State called a sheriff's police investigator who testified that he had been assigned to locate Raymond Washington on June 4, 1986. As a result of his efforts, he discovered that Washington was living in Lexington, Mississippi, and spoke to him by telephone on November 10. He also testified to his belief that Washington would testify at defendant's trial. When the trial court indicated that it would grant the State's motion, defense counsel requested leave to file an answer to the motion and that the motion be continued to Friday, November 14. The trial judge indicated he would not be in court that day and proposed Monday, November 17 for the hearing. However, defense counsel informed the court that he had to be in Markham then and asked if the hearing could be held on November 18 or 19. The court scheduled the hearing for the 18th. Due to defense counsel's absence, the hearing was held on November 19. At that time, the trial court did not rule on the State's motion but instead ruled that

defense counsel's request for time to respond to the State's motion constituted a delay occasioned by the defendant within 21 days of the end of the 120-day term which allowed the court to continue the cause on the State's application for not more than 21 days beyond the end of the term under section 103—5(f).

Defendant asserts that any delay in the proceedings was occasioned by the State's filing its motion just three days before the end of the term. He argues that where a party files a motion, the time necessary to respond is delay attributable to the movant, citing, *inter alia, People v. Jones* (1984), 104 Ill. 2d 268, 472 N.E.2d 455. We disagree.

In *People v. Eckmann* (1978), 60 Ill. App. 3d 300, 376 N.E.2d 751, the defendant appealed the denial of a motion to dismiss based on expiration of the 120-day term. He contended that his attorney's request for a week's continuance to respond to the State's petition to try him as an adult did not constitute delay. The State had served the petition upon defense counsel on the morning of a hearing on the State's delinquency petition. The defendant argued that the delay was occasioned by the State's failure to give the two-day notice of the former petition required by local court rules. Citing the general rule that a continuance obtained or agreed to by a defendant within the 120-day term is delay chargeable to him (*People v. Donalson* (1976), 64 Ill. 2d 536, 542, 356 N.E.2d 776; Rudstein, *Speedy Trial in Illinois: The Statutory Right*, 25 De Paul L. Rev. 317, 333 (1975)), the court held that, because defense counsel asked for eight days to respond to the petition when he was only entitled to two days' notice and agreed to an additional day requested by the State, the delay was in fact caused by defendant. *Eckmann*, 60 Ill. App. 3d at 303.

Here, we do not find that the State's motion for a 60-day extension, which it had the clear right to present under the statute, was of such a nature that it required a written answer by defense counsel. The motion was uncomplicated and straightforward. Moreover, we do not find anything in defendant's answer that defense counsel could not have argued when the State first presented its motion. As such, we believe that the delay resulting from defense counsel's request for a continuance to answer the motion was occasioned solely by defendant.

Even if that is not the case, defense counsel's inability to attend a hearing on Monday, November 17 because he was engaged elsewhere did constitute such a delay. (*People v. Hairston* (1970), 46 Ill. 2d 348, 354, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658; *People v. Logan* (1983), 117 Ill. App. 3d

753, 757-58, 453 N.E.2d 1317; *People v. Cichanski* (1980), 81 Ill. App. 3d 619, 621, 401 N.E.2d 1315.) Moreover, that delay occurred "within" 21 days of the end of the period within which defendant was required to be tried as that term is used in section 103—5(f).

The last day of the term, *viz.*, November 15, 1986, a Saturday, was included therein under section 1.11 of "An Act to revise the law in relation to the construction of the statutes" (Ill. Rev. Stat. 1983, ch. 1, par. 1012). However, under the Act, when the last day of such a term is a Saturday, that day and the next are excluded therefrom. As such, Monday, November 17, was actually the last day of the term. (See *People v. Hill* (1973), 15 Ill. App. 3d 349, 304 N.E.2d 490.) Therefore, based on the delay occurring on that day, we believe the trial court did not abuse its discretion in treating the State's motion under section 103—5(c) as an application for a 21-day extension under section 103—5(f).

Finally, we will not attribute this delay to the State simply because it filed its motion for an extension three court days before the end of the term. In this regard, we reject as unsupported by the record the assertion that the State was seeking to profit from its lack of diligence in so doing. And, we decline to interpret *People v. Jones* (1984), 104 Ill. 2d 268, 277, 472 N.E.2d 455, stating that delays occasioned by motions by defendants are ordinarily chargeable to them, as establishing the *per se* rule for which defendant cites that case.

For all of the foregoing reasons, the judgment of conviction entered by the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P.J., and RIZZI, J., concur.