THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD WYATT, Defendant-Appellant.

First District (3rd Division) No. 1—87—1638

Opinion filed July 26, 1989.

Randolph N. Stone, Public Defender, of Chicago (Hugh Stevens and Rebecca Carmen, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Kenneth T. McCurry, and Mark A. Shlifka, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Don F. Wyatt,[1] appeals from a sentence entered against him after he was charged with and pleaded guilty to aggravated criminal sexual abuse. On appeal defendant contends that the trial court improperly considered the victim's age in aggravation of the sentence and improperly refused to consider in mitigation that defendant was beaten and raped in jail, and that the four-year sentence is excessive.

For the reasons stated below, we affirm the judgment of the circuit court.

Defendant was charged by information with one count of aggravated criminal sexual abuse upon a victim under 13 years of age. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—16(c)(1).) Defendant entered a plea of guilty and waived his right to a jury or bench trial. The parties stipulated that the State would prove defendant guilty beyond a reasonable doubt. The parties also stipulated that defendant was 43 years old on the date of the incident. Further, the parties stipulated that the sworn testimony of the victim, her parents, investigating police officers, and medical personnel would show the following.

The victim would testify that on November 26, 1984, around 4:30 p.m. in Streamwood, Illinois, she went to the residence of defendant, her next-door neighbor. The victim, six years old, and her younger sister entered defendant's home. The sister went into the kitchen. The victim walked into the hallway and upon defendant's request entered the bedroom. Defendant asked the victim to get onto the bed and lie down, which she did. Defendant lifted her skirt and pulled down her tights and underpants. Defendant told her that "it should be wet, not dry" and placed his mouth on the victim's vaginal area. Defendant then fondled the victim's vaginal area with his fingers. The victim's sister entered the bedroom, and defendant told her to stay out and close the door. Defendant then inserted his finger into the victim's vagina and the victim told him, "Stop. It hurts." Defendant

---

[1]The notice of appeal filed in this matter indicates the defendant's name is Donald Wyatt. The information and pleadings filed on behalf of defendant in the proceedings below and the record taken as a whole, however, indicate that the correct name of defendant is Don F. Wyatt.

removed his finger and helped the victim pull up her underpants and tights. Defendant then left the bedroom and told the victim not to tell anyone of the incident.

Streamwood police investigator Edward Burke would testify that he spoke to defendant in the presence of Officer Zinkel on November 27, 1984. After being advised of his *Miranda* rights, defendant stated that between 4 and 4:30 p.m. on November 26, 1984, he asked the victim and her sister to come into his home. While in the living room, the victim was sitting on his lap, and he began rubbing her belly "like he always does" and then placed his hand under her dress and underwear and rubbed her vaginal area. Defendant then followed the victim into the bedroom, where she stated, "It is dry, and it should be wet." When the victim got up on the bed and lay down, she pulled down her tights and underwear. When asked why he did not stop her from doing so, defendant stated, "I really don't know," and began to cry. Defendant also stated, "I know I have a problem." He stated that he did not touch the victim with his hand or mouth while in the bedroom.

Streamwood police personnel and the victim's mother would testify that the victim was taken to the hospital late in the evening of November 27, 1984, where she was examined by Dr. Bartush and Nurse Cheryl Bogdanowski. Bartush and Bogdanowski would testify that the victim complained of sexual assault. Bartush's examination revealed a mild bruising of the inner area of the vaginal area, for which the victim was treated.

After the stipulated testimony was admitted, a sentencing hearing was held. The State first called witnesses in aggravation of the offense. Police officer Kathleen Zinkel testified that she spoke with the victim in the victim's home on November 27, 1984, in the presence of the victim's mother, Detective Burke, and an assistant State's Attorney. The victim told Zinkel that the day before, defendant invited her and her sister to come into his home. It was common for defendant to invite the children over. Her sister went into the kitchen while the victim sat on defendant's lap in the living room. Defendant rubbed her stomach and vaginal area with his hand. Defendant then asked her to follow him into the bedroom and get on the bed. The victim's report of the incident in the bedroom is substantially the same as set forth above as the victim's stipulated testimony. After the incident in the bedroom, the girls walked outside and defendant called them back and said that if their mother asked about what occurred, to tell her that defendant walked in on the victim while she was going to the bathroom. Zinkel also stated that the

victim demonstrated what happened by using anatomically correct dolls supplied by the police. On cross-examination, Zinkel stated that while defendant was interviewed at his home and at the police station, he offered no violence and was cooperative. Defendant also cried at one point and stated that he needed help.

The victim's mother testified that on November 26, 1984, her husband had left on a business trip. Around 6 p.m., she was making dinner. The victim was exceptionally quiet. Defendant rang the doorbell, came in and asked if he could see the Christmas lights in the front window and asked how they were put up. The victim said nothing when defendant entered the house. Defendant took a quick look at the lights and left. The victim's mother stated that defendant seemed very surprised to see the mother. The mother put her children to bed after dinner and got into her own bed, where her youngest daughter also lay down. The daughter asked, "[A]m I supposed to be wet?" The mother asked her to explain, and the girl stated that an incident had occurred between defendant and the victim. The mother approached the victim and questioned her regarding the incident. The mother called the police and also took the victim to the hospital.

The mother stated that defendant had moved in next door to her family four or five months earlier. Relations between the families prior to the incident were friendly, and it was not uncommon for the children to visit defendant's home. Since the incident, the victim has had nightmares in which wolves were trying to get her. The victim would constantly watch defendant's home and would hide from him. Prior to the incident, the victim had not complained of nightmares. Also since the incident, the victim's teachers informed the mother that the victim would stare into space. The parents had a harder time controlling the victim, who would have temper tantrums and would be unreasonable. The victim began weekly counseling sessions in December 1984.

On cross-examination, the mother stated that the victim was a straight-A student both prior to and after the incident. The victim has been developing academically and still attends the same school she attended prior to the incident. The mother admitted that many factors contribute to a child's development and emotional well-being. Nevertheless, she believed the incident with defendant was the cause of her daughter's behavior changes.

Rebecca Bier testified that she is a psychiatric social worker who examined the victim on December 6, 1984. The victim was extremely bright and sensitive. In drawings Bier asked the victim to make, eve-

rything was in proportion except the people were somewhat imbalanced and were not securely on the ground. The victim included a figure of herself, which showed the upper and lower portion of the body to be imbalanced and the eyes were very black. Bier associated the blackened eyes with a trauma. Bier found no peer problems in the victim. Bier was familiar with the victim's academic performance and with the problems reported by the victim's teacher. Bier diagnosed the victim as having severe post-traumatic stress disorder. Bier also stated that although it is difficult to predict, the incident with defendant might affect the victim's ability to function in intimate relationships with other males in her adolescence, and might suffer self-esteem problems. On cross-examination, Bier stated that she was not counseling the victim, but reached her diagnosis after spending three 50-minute sessions with the victim. Bier had consulted with two counselors who never met the victim.

Streamwood police investigator Edward Burke testified that he spoke to defendant on November 27, 1984, and that after giving defendant his *Miranda* rights, defendant related the incident as set forth above in the stipulated testimony of Officer Burke. On cross-examination, Burke stated that defendant was cooperative and cried.

In mitigation, the defense called two witnesses in addition to defendant. First, Lucy Hoyer testified that she has known defendant for more than 20 years, since she was 13 years old. Defendant was a neighbor who would listen and give advice to Hoyer when she was having problems with school, friends, and her parents. Defendant infused a morality into her life and encouraged her to take on responsibility. His influence has carried over into her life as an adult. Hoyer stated that she was divorced and that defendant has been a close friend to her children. Hoyer stated that defendant and her children have a healthy relationship.

Hoyer also stated that defendant holds three jobs and is highly regarded by his co-workers. Defendant is remorseful regarding the subject incident. Hoyer read into the record a letter sent to one of defendant's employers commending defendant's handling of some young shoplifters in his role as security guard. The letter is from the mother of one of the boys, who stated that defendant acted compassionately with her son, who was being talked into stealing by another young boy.

Second, Charles C. Anderson testified that he is a registered psychologist with a specialty in marriage and family and deals particularly with emotionally disturbed children and adolescents. Anderson never met the victim, her family, or defendant. He is familiar with

the use of drawings as a method of observing and testing; however, children's drawings have very poorly proven reliability and validity. Determining a relationship between placement on the page, line heaviness, and other factors to security, self-esteem, or other constructions is speculative. On the basis of a drawing test alone, Anderson stated that one cannot determine a child's present emotional stability or esteem or predict future self-esteem. Anderson further stated that he would prefer not to be asked to make, based upon three 50-minute sessions with an individual, certain positive judgments regarding a child's well-being and future emotional well-being.

Finally, defendant testified that he now lives in Hanover Park. He holds three jobs, including quality control inspector part-time for one company, a supervisor of quality control in a laboratory, and a part-time job as a store detective. His credibility in his employment has never been questioned. He is divorced as a result of the incident with the victim. The subject incident has "torn apart" defendant's family, and he believes he was the cause of his father's recent heart attack. Relations with his son, although not good soon after the incident, have since improved. Defendant has lost confidence in his judgments and has lost friends. Defendant indicated his desire to "make this wrong a right" and to express his remorse to the victim and her family. Defendant asked the court for a second chance to show that such an incident would not happen again.

On cross-examination defendant admitted that he had not had any counseling, nor had he volunteered to help victims of sexual abuse. He acknowledged that he did not call his employers to testify as character witnesses. On redirect examination, however, he stated he feared loss of employment if he confided in his employers regarding the subject incident.

At the close of the witness testimony, the prosecutor read into the record a victim impact statement signed by the victim's father. The statement describes a friendly, trusting relationship between the victim's family and defendant before the incident. Defendant, however, used the trust and friendship to take away the victim's innocence. In the months following the incident, the victim was afraid to play in her backyard for fear that defendant would see her and say or do something to her. After defendant moved, the anxiousness decreased. The victim's family has been traumatized. Defense counsel then read into the record a letter from the Poplar Creek librarian stating that the library would provide defendant an opportunity to participate in a court-ordered community service system at the library.

Counsel for the parties argued the factors in aggravation and mitigation. Defense counsel requested probation without a jail sentence. The court sentenced defendant to four years' imprisonment to be followed by a period of mandatory supervisory leave. The court denied a motion for modification of sentence subsequently filed by defendant and argued by the parties. Defendant then appealed.

On appeal defendant initially asserts that in denying probation and imposing a four-year prison term, the trial court improperly considered the victim's age. Further, the court improperly refused to consider that defendant was beaten and raped while in jail after his sentencing, a factor that defense counsel raised at the hearing on the motion to modify the sentence. Defendant cites section 5—6—1(a) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—1(a)), which provides that the court shall impose a sentence of probation or conditional discharge unless the court determines that imprisonment or periodic imprisonment is necessary to protect the public, or probation or conditional discharge would deprecate the seriousness of the offense and be inconsistent with the ends of justice.

Section 5—5—3(b) of the Code (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3(b)) provides that appropriate dispositions for a Class 2 felony such as the offense in the instant case are the following: (1) a period of probation; (2) a term of periodic imprisonment; (3) a term of conditional discharge; (4) a term of imprisonment; (5) a fine; or (6) an order directing the defendant to make restitution to the victim. The trial court here rejected defendant's request for probation and imposed a four-year prison term. The statutory range for a term of imprisonment for a Class 2 felony is three to seven years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(5).) Defendant requests that this court either reduce the sentence or vacate the sentence and remand the matter for resentencing.

██ █ A reviewing court may not alter a sentence imposed by the trial court absent an abuse of discretion by the lower court, since the trial court normally is in a better position to determine an appropriate sentence. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) The sentence must be based upon the particular facts of each case and depends upon many factors, including the defendant's demeanor, credibility, general moral character, environment, habits and age. (*Ward*, 113 Ill. 2d at 525-26.) The sentence will not be disturbed unless it clearly appears that the penalty constitutes a great departure from the fundamental law and its spirit and purpose. The spirit

and purpose of the law are upheld when a sentence reflects the seriousness of the offense and gives adequate consideration to the rehabilitative potential of the defendant. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

First, regarding the victim's age, defendant asserts that the trial court considered this factor as the primary basis for denying probation and imposing a term of imprisonment. Defendant cites *People v. White* (1986), 114 Ill. 2d 61, 499 N.E.2d 467, which held that it was improper for the trial court to consider as an aggravating factor that the victim was a child under the age of 13 years, where a necessary element of the conviction, aggravated battery, is that the victim is less than 13 years old. (*White*, 114 Ill. 2d at 66-67.) Defendant asserts that, as in *White*, the victim's age in the instant case was inherent in the offense and should not have been considered in aggravation.

■ We find that the trial court properly considered the victim's age in considering the nature of the offense and the circumstances present in the instant case. As stated by the supreme court in *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, a factor necessarily implicit in an offense should not be used as an aggravating factor at sentencing. (*Conover*, 84 Ill. 2d at 404.) Case law handed down since *Conover*, however, has held that *Conover* does not compel an inflexible construction of the rule. For instance, in *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 424 N.E.2d 44, an appeal from an armed robbery conviction, the court held that a trial court may properly consider "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." (*Tolliver*, 98 Ill. App. 3d at 117-18.) *Tolliver* stated that although the trial court could not consider that violence was used or that compensation was received, it could look to the "degree of force employed and the amount of money taken." *Tolliver*, 98 Ill. App. 3d at 118.

Relying on *Tolliver*, the court, in *People v. Hunter* (1981), 101 Ill. App. 3d 692, 428 N.E.2d 666, held that the trial court, in sentencing the defendant for aggravated arson, properly considered that the defendant had endangered the lives of an entire family. The court stated that, although the threat of serious harm is a factor of the offense and therefore cannot be considered in aggravation, the court properly considered the nature and circumstances of the defendant's conduct. (*Hunter*, 101 Ill. App. 3d at 694-95.) Further, *People v. Brewer* (1984), 127 Ill. App. 3d 306, 468 N.E.2d 1242, held that it was not error for the trial court to consider in aggravation the ex-

treme youth of the victim when sentencing the defendant for indecent liberties with a child. *Brewer*, 127 Ill. App. 3d at 312, citing *Hunter*, 101 Ill. App. 3d 692, 428 N.E.2d 666, and *Tolliver*, 98 Ill. App. 3d 116, 424 N.E.2d 44.

Similarly, in the instant case it was not improper for the trial court to consider the age of the victim in sentencing. The court stated that, in sentencing, it considered in particular the nature of the crime. In mitigation, the court took into account defendant's remorse and credibility, and the credibility of defendant's character witness, Lucy Hoyer. In aggravation, the court stated that even though the child was six years old, the offense did not call for an extended-term sentence. The court noted the age of the victim and defendant's age, and emphasized that it considered mainly the nature of the offense. We find no abuse of discretion by the trial court regarding its consideration of the victim's age.

■ Regarding the trial court's failure to consider in mitigation that defendant was beaten and raped in jail two weeks after the original sentencing, we also find no abuse of discretion. The incident occurred in the Cook County jail, where defendant was being held temporarily before being transferred to the penitentiary. Defense counsel raised the issue at the hearing on defendant's motion to reconsider the sentence. On appeal defendant cites *People v. Sterling* (1978), 62 Ill. App. 3d 986, 379 N.E.2d 660, which held that in sentencing the defendant for a conviction of driving while intoxicated, the trial court improperly refused to consider matters relating to the defendant's life offered in mitigation. The matters included conduct by a former attorney of the defendant who absconded with funds received from a personal injury settlement involving the defendant, and injuries received by the defendant on the day of his arrest. (*Sterling*, 62 Ill. App. 3d at 990.) Defendant also cites *United States v. Dunn* (N.D. Ill. 1984), 585 F. Supp. 1365, for the proposition that new or unforeseen developments are properly raised in a motion to reconsider a sentence.

Our research has failed to uncover a case factually on point regarding this issue. Nevertheless, in applying the abuse of discretion standard, we find that the trial court exercised sound discretion in denying defendant's motion to reconsider the sentence. (*People v. Ward* (1986), 113 Ill. 2d 516, 499 N.E.2d 422, *cert. denied* (1987), 479 U.S. 1096, 94 L. Ed. 2d 168, 107 S. Ct. 1314.) We agree with the trial court that the incident that occurred in jail was not a proper basis for consideration on a motion to reduce the sentence imposed. The court noted that the incident in jail would be the proper

subject of a separate criminal proceeding.

■■ Defendant also contends on appeal that the sentence is excessive. Defendant requests this court on this basis to either reduce the sentence or reverse the sentence and remand this matter for resentencing to less than four years' imprisonment. Defendant cites *People v. Nelson* (1982), 106 Ill. App. 3d 838, 436 N.E.2d 655, and *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491, for the proposition that in certain cases, a reviewing court may reduce the sentence even when the sentence is within statutory limits, where the sentence is found to be clearly excessive. (*Gibbs*, 49 Ill. App. 3d at 648.) Defendant also questions the admissibility of the victim impact statement read into the record at the sentencing hearing.

We find, however, that the sentence was proper. Further, the victim impact statement was properly considered by the court in sentencing. Section 6 of the Bill of Rights for Victims and Witnesses of Violent Crime Act (Ill. Rev. Stat. 1985, ch. 38, par. 1406) allows the victim of a violent crime to present to the court a statement of the impact of the crime upon him. Section 5—4—1 (a) of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—4—1(a)) provides that, except in capital cases, a crime victim may provide an impact statement and evidence in aggravation or mitigation at the sentencing hearing. (See *People v. Fountain* (1989), 179 Ill. App. 3d 986, 534 N.E.2d 1303.) In the instant case, the trial court considered the impact of the offense upon the victim and her family, but stated that he did not give that factor disproportionate weight. We have reviewed the record and find no abuse of discretion in the four-year sentence. *People v. Crete* (1986), 113 Ill. 2d 156, 497 N.E.2d 751.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

WHITE and CERDA, JJ., concur.