NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180138-U

NO. 4-18-0138

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 8, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Woodford County |
| ROBERT W. WARE, | ) | No. 17CF104 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court reversed and remanded, finding the trial court erred in refusing defendant's request to provide a self-defense instruction to the jury.

¶ 2     In September 2017, defendant, Robert W. Ware, an inmate at the Woodford County jail, was charged with aggravated battery by strangulation, a Class 3 felony (720 ILCS 5/12-3.05(a)(5) (West 2016)), and obstructing justice, a Class 4 felony (720 ILCS 5/31-4(a) (West 2016)). In December 2017, a jury convicted defendant of aggravated battery but acquitted him of obstructing justice.

¶ 3     In March 2018, at sentencing, the trial court heard arguments from the State and defendant, who at that time was *pro se*, and sentenced defendant to four years in the Illinois Department of Corrections. On appeal, defendant argues the trial court erred in refusing to provide the jury with a self-defense instruction. Because no posttrial motion was filed concerning this issue, defendant requests we review this under the plain-error doctrine.

¶ 4                                   I. BACKGROUND

¶ 5         In September 2017, the State filed two criminal counts against defendant. The first alleged he committed aggravated battery by means of strangling Donald Phillips, another inmate in the Woodford County jail. The second count alleged defendant obstructed justice by destroying evidence when he wiped blood from the floor in the cell block after the incident.

¶ 6         In November 2017, defendant filed a notice indicating his intention to assert an affirmative defense, namely "use of force in defense of person." 720 ILCS 5/7-1 (West 2016). In December 2017, the jury trial commenced. Courtney Soto testified she is a corrections officer at the Woodford County jail and was working in pod B on the day of the incident. After describing the layout of the cells, she stated she went to do a routine check of pod B and saw Donald Phillips lying on the floor with blood underneath his shirt and on his clothes. Soto stated, "He appeared to be unconscious." She called out his name and he stirred a bit, opened his eyes, and made some sounds. She began to administer first aid to Phillips before he was taken to the hospital. Soto said defendant called out to her that Phillips had slipped on the floor.

¶ 7         Dr. John Pieniazek treated Phillips in Eureka Hospital's emergency room. Phillips was conscious and told the doctor that "he was choked, he was put in—he was strangulated by being placed in a choke hold." Dr. Pieniazek testified Phillips presented classic signs and symptoms of someone who had been strangled, namely bruises and contusions around the neck, along with bloodshot eyes, blurry vision, nausea, and abrasions. He explained Phillips "ha[d] abrasions on the forehead and abrasions on the neck, which typically are signs of struggle to preserve life." The State introduced two photographs showing Phillips's neck injuries, which the doctor described as consistent with strangulation. Dr. Pieniazek diagnosed Phillips with a concussion, contusion on the neck, laceration to the forehead, and a headache.

¶ 8        Donald Phillips was serving a one-year jail sentence for domestic battery. He testified, on the morning of the incident, he and defendant got into an argument about changing the television channel in the jail pod. Phillips was cleaning the shower area, and he took out a dustpan, toilet scrubber, and spray bottle from a cleaning bucket and put the items on one of the lunch tables. He turned around and was "angrily" confronted by defendant with the toilet scrubber in his hand. Phillips said he "snatched the toilet scrubber from [defendant's] hand and tried to smack [defendant] in the face with it." He said they began fighting and defendant hit him in the forehead. Phillips said he went down very quickly but he "was still trying to fight [defendant] *** but *** was in a losing situation." Once defendant put him in a headlock, Phillips "tried to bite his thumb to make him let go." When asked what he was trying to do during the course of the fight, Phillips responded, "I guess I was trying to win the fight." He said defendant used a stranglehold on him by holding his left forearm across Phillips's throat. During the stranglehold, Phillips said, "it was very difficult to breathe. I could not breath[e] normally." He described his breathing during this time as "very raspy." He was trying to fight back against defendant but eventually was just trying to get away from him after he realized he lost the fight. He said he thought he "was going to die" because "there was no way that [he] was going to be able to break that stranglehold." He said he has had prior arguments with defendant before that day.

¶ 9        The State called additional correctional officers, who testified about Phillips's injuries and to lay the foundation to admit the video of the incident before resting its case.

¶ 10       The defense called Mitchell Lilienthal, an inmate who was housed in the same pod at the Woodford County jail. He did not see how the incident started, but he saw how Phillips kept trying to fight defendant. He said defendant asked Phillips approximately four or

five times, "are you good?", which he perceived meant, "are you done?" Lilienthal did not see defendant choke Phillips or hear Phillips make any choking sounds. He could hear Phillips breathing pretty hard but never saw defendant's arm around Phillips's neck. He said Phillips kept scrambling around to "get back to the dominant position like you would in a fight," so defendant kept using force to hold him down so Phillips would not get back up.

¶ 11        Defendant testified he is serving a 300-day sentence for a driving under the influence probation violation. Before the incident with Phillips began, he said he and Phillips got into an argument about changing the television channel in pod B. While he and Phillips cleaned during the morning, Phillips put a recently used toilet brush on one of the common area tables where the inmates in pod B regularly eat. According to defendant, the fight started when he "came up to [Phillips], and *** said why would you put this nasty a*** toilet brush and [dustpan] on the table?" Phillips then snatched the brush out of defendant's hand and swung it at him. Defendant said he "never got a chance to really react because at that point [Phillips]— rushed at me, and that's when a fight began." Defendant was attempting to wrestle Phillips to the ground while Phillips was making a "growling sound" and trying to poke defendant's eyes. Defendant said he felt a sharp pain and began punching Phillips before wrestling him to the ground again.

¶ 12        Defendant testified he put his arm under Phillips's neck to gain control of the fight as Phillips was attempting to bite him. Defendant said every time Phillips would attempt to bite him, he (defendant) would "put pressure on [Phillip's neck] so cut off [*sic*] circulation so he couldn't breathe. I am trying to make him stop. But he kept growling, and he kept trying to fight." Defendant tried to let Phillips go, but when defendant released his grip, Phillips would try to grab defendant's leg and bite it. Defendant stated, "every time [Phillips] tried to fight I put

pressure on his neck. So I did that one time. He put his arms up ***, so I let him go, because I see I am choking him. *** He would try to move again, I put pressure on [Phillips's neck]." He described the way he had his arm around Phillips's neck as more of a headlock, rather than a chokehold. On cross-examination, defendant admitted he cleaned up the blood on the floor and did not tell the correctional officer the truth, instead telling her Phillips slipped and fell because he did not want to be labeled a "snitch." He explained he had his right arm around Phillips's neck like a headlock, but said, "I didn't really choke him," explaining he was instead applying pressure on the neck. Upon further questioning by the State, defendant admitted, "I choked—I choked him for a second." The State asked defendant, "did you strangle him," and defendant responded, "no," and, "I didn't do anything to strangle him."

¶ 13        During the jury instruction conference, the State moved to withdraw its self-defense instruction because defendant "did not admit that he strangled Mr. Phillips." Defense counsel countered, "[Defendant] certainly fought back. [Defendant] indicated that he showed him that he could choke him so he did it for some period of time. I do agree he maintained that he did not strangle him for any lengthy period of time." In describing defendant's testimony, the trial court stated, "[Defendant] admits that he put his arms around [Phillips's] head, neck area. [Defendant] repeatedly stated—in fact, he initially stated he did choke [Phillips], and then he changed it to—he changed it to a headlock." The court acknowledged the decision whether to issue a self-defense instruction was a close one because defendant admitted choking Phillips, but he also denied strangling him. The court interpreted defendant's statements as a denial he committed the offense; therefore, the court concluded a self-defense instruction was impermissible. Before reaching a verdict, the jury asked several questions, one of them being if self-defense alleviated the State's burden. The trial court

responded that self-defense was not applicable in this case. The jury found defendant guilty of aggravated battery by strangulation, but it acquitted him of obstructing justice.

¶ 14 Defense counsel did not file posttrial motions, claiming he was "not aware of anything that happened during the trial that would sustain a new trial." Disagreeing with defense counsel's assessment, particularly whether denying a self-defense instruction amounted to error warranting a posttrial motion, defendant asked to proceed *pro se* during the sentencing phase. At sentencing, after hearing arguments and recommendations from the parties, the trial court opined, "I don't know why [the State] didn't charge Mr. Phillips. I agree with you [defendant] that to the extent that contact was made to you that could be a crime. *** and to the extent that you are apprehensive, reasonably apprehensive of being hit again, or having some offense contact again, you had the right to defend yourself. You did that. And that, of course, would merit a self-defense instruction." The court also stated, "I think it[']s hard to look at this situation and not think, for instance, Mr. Phillips may have gotten what he had coming." The court restated the reason defendant was not allowed to present a self-defense instruction was due to defendant's denial that he "strangled" Phillips. The court sentenced defendant to four years in the Illinois Department of Corrections.

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 A. Plain Error

¶ 18 Defendant argues the trial court erred in refusing to give a self-defense jury instruction. Since defendant neither objected to the alleged error at trial nor filed any posttrial motions, we would normally find he forfeited appellate review of this issue. *People v. Piatkowski*, 225 Ill. 2d 551, 564, 870 N.E.2d 403, 409 (2007). Illinois "Supreme Court Rule

451(c), however, provides that 'substantial defects' in criminal jury instructions 'are not waived by failure to make timely objections thereto if the interests of justice require.' " *People v. Herron*, 215 Ill. 2d 167, 175, 830 N.E.2d 467, 473 (2005) (quoting Ill. S. Ct. R. 451(c) (eff. July 1, 1997)). In the same vein, Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Our supreme court has stated, "Rule 451(c) is coextensive with the plain-error clause of Illinois Supreme Court Rule 615(a), and the two rules are construed identically." *Piatkowski*, 225 Ill. 2d at 564.

¶ 19    "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Piatkowski*, 225 Ill. 2d at 565. "Generally, a defendant forfeits review of any supposed jury instruction error if he does not object to the instruction or offer an alternative at trial and does not raise the issue in a posttrial motion." *Piatkowski*, 225 Ill. 2d at 564. First-prong plain error is established by demonstrating "prejudicial error," *i.e.*, because the evidence was so closely balanced, "the error alone severely threatened to tip the scales of justice." *People v. Sebby*, 2017 IL 119445, ¶ 51, 89 N.E.3d 675. Prejudice is not presumed; a defendant must meet his burden to show the error was actually prejudicial. *Herron*, 215 Ill. 2d at 187. By contrast, under the second prong, prejudice is presumed because of the importance of the right involved, irrespective of the strength of the evidence. *People v. Fort*, 2017 IL 118966, ¶ 18, 88 N.E.3d 718. Here, defendant claims error under both prongs. However, if error did occur, we

- 7 -

only need to consider if one of the prongs of the plain-error doctrine has been satisfied. *People v. Sykes*, 2012 IL App (4th) 111110, ¶ 31, 972 N.E.2d 1272. The first step in any plain-error analysis is determining "whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49. Accordingly, here, we must first determine whether denying a self-defense instruction amounted to a clear or obvious error. We conclude it does.

¶ 20        "In order to instruct the jury on self-defense, the defendant must establish some evidence of *each* of the following elements: (1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." (Emphasis added.) *People v. Jeffries*, 164 Ill. 2d 104, 127-28, 646 N.E.2d 587, 598 (1995). A criminal defendant is entitled to a jury instruction on self-defense if " 'very slight' " or "some" evidence exists to support the theory of self-defense. *People v. Everette*, 141 Ill. 2d 147, 156-57, 565 N.E.2d 1295, 1299 (1991). " 'A defendant in a criminal case is entitled to have the jury instructed on any legally recognized defense theory which has some foundation in the evidence, however tenuous.' " *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 56, 28 N.E.3d 923 (quoting *People v. Looney*, 46 Ill. App. 3d 404, 410, 361 N.E.2d 18, 22 (1977)). The underlying decision regarding whether there is sufficient evidence in the record to warrant giving the jury a particular instruction is a question of law and will be reviewed *de novo*. *People v. Washington*, 2012 IL 110283, ¶ 19, 962 N.E.2d 902.

¶ 21        Raising the issue of self-defense requires as its *sine qua non* that the defendant admit to the crime as the basis for his reasonable belief that such force was necessary. *People v. Lahori*, 13 Ill. App. 3d 572, 577, 300 N.E.2d 761, 764-65 (1973). This means defendant needed

to admit the charged offense (aggravated battery by strangulation) to make the necessary showing for self-defense. Under the aggravated battery statute, strangle is defined as "intentionally impeding the normal breathing *** of an individual by applying pressure on the throat or neck of that individual ***." 720 ILCS 5/12-3.05(i) (West 2016)). The State argues defendant failed to admit the charged offense and cites the following line of cases supporting the contention that if a defendant denies using force against the victim, the defendant could not reasonably believe force was necessary for protection, and therefore cannot argue self-defense: *People v. Diaz*, 101 Ill. App. 3d 903, 914-15, 428 N.E.2d 953, 962-63 (1981), *People v. Salas*, 2011 IL App (1st) 091880, ¶ 84, 961 N.E.2d 831, and *People v. Chatman*, 381 Ill. App. 3d 890, 897-98, 886 N.E.2d 1265, 1272 (2008). We find these cases distinguishable from the case before us.

¶ 22        In *Diaz*, both defendants were on trial for aggravated battery. The trial court refused to provide a self-defense instruction because neither the defendants nor any defense witnesses testified they struck the victims. One defendant testified he threw a mop without hitting anyone, and the other defendant testified he grabbed someone but did not testify about any use of force against the victims. The appellate court affirmed the trial court's decision to refuse the self-defense instructions because "[the] defendants denied committing the acts." *Diaz*, 101 Ill. App. 3d at 914-15.

¶ 23        In *Salas*, the defendant was charged with first-degree murder and completely denied committing the act, claiming "he never touched the trigger, never shot the gun while he was in the alley, and that he did not shoot anyone." *Salas*, 2011 IL App (1st) 091880, ¶ 85.

¶ 24        In *Chatman*, the defendant was charged with four counts that included either stabbing the victim or striking the victim's body. While the defendant acknowledged there was

physical contact as he struggled with the victim, he never admitted any of the specific physical acts for which he was charged. The trial court, therefore, found he could not argue self-defense. *Chatman*, 381 Ill. App. 3d 900. But in arriving at that conclusion, the *Chatman* court discussed a Third District case, *People v. Rice*, 234 Ill. App. 3d 12, 26-27, 599 N.E.2d 1253, 1264 (1992), where the State was permitted to introduce a self-defense instruction over defendant's objection, after defendant claimed he was protecting himself when he struck the victim "reflexively when the victim scratched him." (Internal quotation marks omitted.) *Chatman*, 381 Ill. App. 3d at 899 (quoting *Rice*, 234 Ill. App. 3d at 27). In *Rice*, the defendant continued to testify that his actions were in self-defense because he thought he was being attacked. *Rice*, 234 Ill. App. 3d at 27. On appeal, defendant argued the instruction was error because it ran counter to his theory of the case, *i.e.*, he lacked the requisite mental state. The appellate court affirmed, stating the State was entitled to the self-defense instruction because defendant testified he acted in self-defense and was protecting himself when he struck the victim. *Rice*, 234 Ill. App. 3d at 26-28. The court in *Chatman* found *Rice* instructive and consistent with the reasoning in other cases discussing granting a self-defense instruction because, "The defendant in *Rice admitted all elements of the crime*." (Emphasis added.) *Chatman*, 381 Ill. App. 3d at 900.

¶ 25        In this matter, while defendant denied he "strangled" Phillips, his testimony coupled with the other evidence presented at trial demonstrate he "strangled" Phillips under the statutory definition of the term. Unlike *Diaz*, *Salas*, and *Chatman*, defendant admitted every element of the offense. His denial of strangulation is somewhat understandable, as the question was posed without context or definition, and the State never clarified the meaning of the word "strangle." Further, the State's question to defendant asking if he "strangled" Phillips essentially required defendant to testify to a legal conclusion at issue in the case because he had already

- 10 -

admitted the necessary facts (or elements) for a conviction. For example, defendant admitted putting pressure on Phillips's neck to impede the latter's breathing. Defendant said every time Phillips would attempt to bite him, he (defendant) would "put pressure on [Phillips's neck] so cut off [*sic*] circulation so he couldn't breathe. I am trying to make him stop." He admitted grabbing Phillips around the neck and described how "every time [Phillips] tried to fight I put pressure on his neck. So I did that one time. He put his arms up ***, so I let him go, because I see I am choking him. *** He would try to move again, I put pressure on [Phillips's neck]." On cross-examination, he admitted choking Phillips "for a second" and acknowledged stopping him from breathing, "for, like, two seconds." On redirect, defendant indicated his intention was to "let [Phillips] know I could choke him out" in order to get him to stop fighting. Having been charged with aggravated battery by strangulation, asking defendant if he "strangled" Phillips was asking for a legal conclusion. A lay witness should not be permitted to testify to a legal conclusion at issue. See *People v. Richardson*, 2013 IL App (2d) 120119, ¶ 10, 995 N.E.2d 477. The prosecutor's question was not simply to elicit a lay witness opinion under Illinois Rule of Evidence 701 (eff. Jan. 1, 2011) (rationally based on his perception and helpful to a determination of a fact in issue) but sought instead a legal conclusion that the actions he described constituted "strangulation" as defined by statute. Unless one is testifying as an expert, it is not permissible to provide an opinion as to a legal conclusion unless that opinion will actually assist the trier of fact. *Richardson*, 2013 IL App (2d) 120119, ¶ 10 (citing *Town of the City of Bloomington v. Bloomington Township*, 233 Ill. App. 3d 724, 735, 599 N.E.2d 62, 69 (1992)).

¶ 26        The evidence and testimony show that defendant established some evidence of each element under *Jeffries* to provide a self-defense instruction. Defendant admitted the use of

force against Phillips and explained he continued to use force only because Phillips kept fighting and trying to bite him. Defendant testified on several occasions that he had Phillips in a "headlock" and would increase pressure on Phillips's neck to cut off circulation so Phillips could not breathe. Phillips confirmed he had difficulty breathing when defendant had his arm around his neck. The video of the incident showed Phillips starting the altercation by attempting to hit defendant with the toilet brush. Defendant admitted committing every element of the offense of aggravated battery by strangulation before the trial court found he could not use a self-defense instruction because he denied "strangling" Phillips. Therefore, we find the trial court's decision to forbid the use of a self-defense instruction was a clear and obvious error and proceed to a plain-error analysis.

¶ 27                                    B. Self-Defense Jury Instruction

¶ 28        Defendant argues the trial court committed plain-error by omitting the self-defense instruction during the jury instruction conference. Although he denied he "strangled" Phillips, defendant contends he admitted the offense as it is defined under the aggravated battery statute, and therefore the jury should have been provided an instruction on self-defense. We agree.

¶ 29        Our supreme court rules allow us to review omitted jury instructions under the plain-error doctrine. In order to establish second-prong plain error from the omission of a jury instruction pursuant to Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013), the defendant is not required to prove beyond doubt his trial was unfair because the omission of the instruction led to his conviction. Rather, he must show the omission created a "serious risk that the jurors incorrectly convicted the defendant because they did not understand the applicable law, so as to

- 12 -

severely threaten the fairness of [his] trial." *People v. Hopp*, 209 Ill. 2d 1, 12, 805 N.E.2d 1190, 1197 (2004).

¶ 30      The only issue was whether the trial court erred in refusing to provide a self-defense instruction due to defendant's failure to admit he "strangled" the victim. It was evident the entire defense strategy consisted of asserting self-defense throughout the trial. Defendant filed an affirmative defense asserting self-defense approximately one month before trial. Defense counsel said self-defense was the only issue in this case during his opening statement. He stated defendant was justified in his actions and he never denied being in a fight, contending instead the reason he was in the fight would be at issue. The testimony and evidence throughout the trial supported self-defense as the only feasible defense defendant could pursue. The testimony of Phillips's initial aggression and continuous struggle during the altercation was coupled with the doctor's testimony describing the bruises and contusions on Phillips's neck as evidence of strangulation, along with a video of the incident corroborating Phillips as the initial aggressor. Although he denied he "strangled" Phillips, defendant testified on direct examination he would "put pressure on [Phillip's neck] so cut off [*sic*] circulation so he couldn't breathe." In this one sentence, defendant admitted all the elements of aggravated battery by strangulation. Defendant was deprived of the one and only defense he had, and at the very end of trial, moments before closing arguments. To be sure, defense counsel was then placed in the unenviable position of having to argue a position contrary to the testimony heard and evidence seen by the jury. The best evidence of how detrimental the loss of a self-defense instruction was to defendant's case is evidenced by what transpired during deliberations. The jurors first asked to see the surveillance video again and then submitted two written questions. The first asked for a definition relating to provocation and the second asked simply, "does self-defense alleviate this

burden?", indicating they were unclear on whether or not to consider self-defense in their deliberations. Reviewing courts have found serious errors where the jury was issued deficient or incomplete self-defense instructions. See *People v. Getter*, 2015 IL App (1st) 121307, ¶¶ 62-64, 26 N.E.3d 391; *People v. Cacini*, 2015 IL App (1st) 130135, ¶¶ 53-56, 45 N.E.3d 738. Here, the error was more serious since the jury received no self-defense instruction at all. The refusal to permit a self-defense instruction was a "structural error," which affected the fairness of defendant's trial and challenged the integrity of the judicial process because there was serious risk the jury did not understand the applicable law. *Hopp*, 209 Ill. 2d at 12.

¶ 31        The threshold for providing a self-defense jury instruction is a low bar to clear. Considering defendant's admission of the elements of the crime, in conjunction with the other evidence presented, there was sufficient evidence in the record to support giving the self-defense instruction to the jury. *Everette*, 141 Ill. 2d at 156-57. Because we find second-prong plain error, we need not address defendant's claims of first-prong plain error and ineffective assistance of counsel.

¶ 32                                III. CONCLUSION

¶ 33        For the reasons stated, we reverse the trial court's judgment and sentence and remand the case for retrial on aggravated battery by strangulation.

¶ 34        Reversed and remanded.